**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GIOVANNI DI SIMONE, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**CN PLUMBING, INC., PEN ENTERPRISES, INC., CALOGERO NOTO, ESTHER ETTEDGUI and PHILIP ETTEDGUI, Jointly and Severally,**<br><br>**Defendants.** | **13 Civ. 5088 (JG) (VVP)**<br><br>**AMENDED COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

### NATURE OF THE ACTION

1.      Plaintiff was a mechanical sprinkler plumber/steamfitter for Defendants' sprinkler contractor business providing installations and repairs of sprinkler systems and boilers for commercial and residential projects, including public projects within the New York City region.  Plaintiff brings this action to recover unpaid overtime wages owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and supporting regulations, and to recover unpaid prevailing wages owed to him as a third-party beneficiary of contracts entered into between Defendants and public entities, including but not limited to the state and city government of New York.  Plaintiff brings his FLSA claims on behalf of himself and all other

similarly situated employees of Defendants, and his NYLL and prevailing wage claims on behalf of himself and any individual who elects to opt-in to this action pursuant to the FLSA.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.     Plaintiff Giovanni Di Simone ("Di Simone") was, at all relevant times, an adult individual residing in Queens County, New York.  Di Simone consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his written consent form is attached hereto and incorporated by reference.

6.     Upon information and belief, Defendant CN Plumbing Inc. ("CN Plumbing") is an active New York corporation headquartered at 59-14 Linden Street, Ridgewood, New York 11385.

7.     Upon information and belief, Defendant Pen Enterprises, Inc. ("Pen Enterprises" and, collectively with CN Plumbing, the "Corporate Defendants") is an active New York corporation headquartered at 521 Coney Island Avenue, Brooklyn, New York 11218.

8.     Upon information and belief, Defendant Calogero Noto ("Noto") is an owner,

officer, director and/or managing agent of CN Plumbing, whose address is unknown at this time and who participated in the day-to-day operations of CN Plumbing and acted intentionally and maliciously, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants.

9. Upon information and belief, Defendant Esther Ettedgui ("E. Ettedgui") is an owner, officer, director and/or managing agent of Pen Enterprises, whose address is unknown at this time and who participated in the day-to-day operations of Pen Enterprises and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants.

10. Upon information and belief, Defendant Philip Ettedgui. ("P. Ettedgui" and, collectively with Noto and E. Ettedgui, the "Individual Defendants") is an owner, officer, director and/or managing agent of Pen Enterprises, whose address is unknown at this time and who participated in the day-to-day operations of Pen Enterprises and acted intentionally and maliciously and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL §§ 2 and 651 and the regulations promulgated thereunder, and is jointly and severally liable with the Corporate Defendants.

## COLLECTIVE ACTION ALLEGATIONS

11. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of all mechanical plumbers/steamfitters

who are or were employed by Defendants ("Collective Action Members") since August 13, 2010 and through the entry of judgment in this case (the "Collective Action Period").

12.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated in that they were all subjected to Defendants' illegal policy of failing to pay wages for all hours worked and overtime premium pay.  As a result of that policy, Plaintiff and the Collective Action Members did not receive compensation for all hours worked and/or overtime premium payments for all hours worked in excess of forty (40) in a given week.

## STATEMENT OF FACTS

13.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

14.     Upon information and belief, at all relevant times, the Corporate Defendants had gross revenues in excess of $500,000.00.

15.     At all relevant times, Defendants employed and/or continue to employ Plaintiff and each of the Collective Action Members within the meaning of the FLSA, 29 U.S.C. § 203(d).

16.     Based on information gathered from Defendant CN Plumbing's public business records, Defendant Noto is the president and owner of CN Plumbing.  Upon information and belief, Noto handles CN Plumbing's payroll and record keeping from CN Plumbing's central office in Ridgewood, New York and he is actively involved with CN Plumbing's day-to-day operations.

17.     Based on information gathered from Defendant Pen Enterprises' public business

4

records, Defendant P. Ettedgui is the president and owner of Pen Enterprises.   Upon information and belief, Defendants E. Ettedgui and P. Ettedgui handle Pen Enterprises' payroll and record keeping and they are actively involved with Pen Enterprises' day-to-day operations.

18.     At all relevant times, CN Plumbing has been in the business of installing and repairing sprinkler systems and boilers for commercial and residential buildings within the New York City region.

19.     Upon information and belief, Pen Enterprises has been an air conditioning contractor for commercial and residential buildings within the New York City region focusing primarily on governmental and public projects.

20.     At all relevant times, Defendants contracted with or on behalf of governmental entities to provide plumbing and sprinkler services upon, among other projects: Bellevue Hospital, located at 462 1st Avenue, New York, New York 10016; Kings County Supreme Court, located at 360 Adams Street, Brooklyn, New York 11201; Callen-Lorde Community Health Center ("Callen-Lorde"), located at 356 West 18th Street, New York, New York 10011; Bronx Psychiatric Hospital, located at 1500 Waters Place, Bronx, New York, 10461; and James Weldon Johnson Community Center ("Johnson Center"), located at 1833 Lexington Avenue, New York, New York 10029.  Defendants' projects with or on behalf of governmental entities are hereinafter referred to as the "Public Works Projects."

21.     Upon information and belief, CN Plumbing entered into contracts to perform work on the Public Works Projects as a subcontractor with the City of New York, or a division thereof, with Pen Enterprises as the prime contractor.  Upon information and belief, these contracts were to provide plumbing and sprinkler services for the Public Works Projects.

22.     Upon information and belief, the contracts for these Public Works Projects required that Defendants pay and ensure payment of the prevailing rates of wages and supplements to all workers furnishing labor on the sites of the Public Works Projects, including their direct employees and all other persons furnishing labor on the sites of the Public Works Projects.   Upon information and belief, the public works contracts also provided that any subcontracts that Defendants entered into contain language requiring the payment of prevailing rates of wages and supplements to all workers furnishing labor on the sites of the Public Works Projects.

23.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("Prevailing Wage Schedule") to be paid to the Plaintiff should have been annexed to and formed as part of the public works contracts.  If not annexed to the public works contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

24.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rated in the public works contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise and the contracts entered into between Defendants and governmental agencies.

25.     Upon information and belief, Plaintiff and the Collective Action Members have not received: (i) wages for all hours worked at the rates required in the New York City Prevailing Wage Schedules; and (ii) overtime pay as required by the FLSA, the NYLL, and the New York City Prevailing Wage Schedules.

26.     Plaintiff Di Simone was employed by Defendants as a mechanical

6

plumber/steamfitter from on or about August 15, 2005 through on or about March 26, 2013 (the "Di Simone Employment Period").

27.     Throughout the Di Simone Employment Period, Di Simone typically worked five (5) days per week from approximately 6:45 am to between 4:00 pm and 4:30 pm for a total of between forty-six and one-quarter (46.25) and forty-eight and three-quarters (48.75) hours, and sometimes more.  In the morning he was required to report to the Central Office of CN Plumbing, located at 59-41 Linden Street, Ridgewood, New York (the "Central Office") at approximately 6:45 am to load large tools, machinery and materials that were stored at the Central Office into trucks for the day's work.  Loading the trucks in the morning took between fifteen (15) and twenty (20) minutes per day and started the continuous work day.  In the afternoon, Di Simone was required to return to the Central Office to report on the tasks he had performed that day, make a list of tools and materials that he needed for the following day, and clean and unload the tools, machinery and trucks.  Di Simone typically spent fifteen (15) to forty-five (45) minutes at the Central Office in the afternoons.  Di Simone was never compensated for any time spent at the Central Office or traveling between the Central Office and the job sites even though such time is compensable pursuant to the continuous work day.

28.     When Di Simone worked on some of the prevailing wage projects, specifically Callen-Lorde, Bellevue Hospital, Bronx Psychiatric Hospital, and the Kings County Supreme Court, he was typically required to report to the Central Office one (1) morning per week. Regardless of which job site he worked at, he was consistently required to report to the Central Office in the afternoon.

29.     Throughout the Di Simone Employment Period, Di Simone typically worked at construction job sites Monday to Friday, between approximately 7:00 am and 3:00 or 3:30

p.m., and sometimes later.  At times, specifically at the Callen-Lorde project, he also worked weekend hours.  His meal breaks typically lasted between fifteen (15) and thirty (30) minutes.

30.    While Di Simone worked at the Callen-Lorde prevailing wage project, Defendants sometimes required Di Simone to spend up to approximately fifty (50) hours per week working at the job sites, not including the time spent at the Central Office or traveling between the Central Office and the job sites.  Despite the fact that Di Simone worked at job sites more than forty (40) hours in a given week, Di Simone was always paid at his regular hourly rate for all hours worked at job sites beyond forty (40).  During the weeks in which Di Simone did not get paid overtime premiums for working more than 40 hours at Callen-Lorde, Defendants also frequently failed to pay Di Simone for between approximately two and three (2 – 3) hours per week in addition to the time spent at the Central Office and traveling between the Central Office and the job site, for which he was never compensated

31.    Throughout the Di Simone Employment Period, for his work, Di Simone was always paid at a rate of approximately $10.25 per hour in check.  During the weeks in which Di Simone was required to work more than forty (40) hours per week at the job sites, Defendants paid him in cash for all such hours in excess of forty (40) per week at "straight-time" rates.  As set forth above, Defendants never paid Di Simone anything, let alone one and one-half (1.5) times his regular hourly rate, for the overtime hours spent working in the Central Office and for travelling between the job sites and the Central Office.

32.    Notwithstanding the fact that Di Simone worked as much as fifty (50) hours per week at the job sites and between five (5) and nine (9) hours per week at the Central Office and travelling to and from the Central Office to the job sites, Di Simone did not receive overtime premium pay of one and one-half (1.5) times his regular hourly rate for hours worked in excess

8

of forty (40) in a given workweek.  Defendants' failure to pay Di Simone overtime premium pay for his hours worked in excess of forty (40) in a given workweek was a corporate policy of Defendants that applied to all of Defendants' mechanical plumbers/steamfitters.

33.     Di Simone worked for Defendants at Bellevue Hospital for approximately six (6) months in or around 2008 and for approximately four (4) months in or around 2011, as a mechanical steam/sprinkler fitter.  During this time, Di Simone often worked at the job site Monday through Friday approximately eight (8) hours per day, for a total of approximately forty-five and one-quarter (45.25) and forty-seven and three-quarters (47.75) hours per week. During weeks when Plaintiff did not work exclusively at Bellevue, he worked on other projects for CN Plumbing while working several days at Bellevue, and his total hours still typically exceeded forty (40) per week as described.

34.     Di Simone worked for Defendants at Bronx Psychiatric Hospital for approximately eight (8) months between 2008 and 2009 as a mechanical steam/sprinkler fitter. During this time, Di Simone often worked at the job site Monday through Friday approximately eight (8) hours per day, for a total of approximately forty-five and one-quarter (45.25) and forty-seven and three-quarters (47.75) hours per week.  During weeks when Plaintiff did not work exclusively at Bronx Psychiatric, he worked on other projects for CN Plumbing while working several days at Bronx Psychiatric, and his total hours still typically exceeded forty (40) per week as described.

35.     In or around 2010, Di Simone worked for Defendants at the Kings County Supreme Court for approximately seven (7) months, as a mechanical steam/sprinkler fitter.  Di Simone typically often at the job site Monday through Friday, approximately eight (8) hours per day, for a total of approximately forty-five and one-quarter (45.25) and forty-seven and

three-quarters (47.75) hours per week.  During weeks when Plaintiff did not work exclusively at Kings County Supreme Court, he worked on other projects for CN Plumbing while working several days at Kings County Supreme Court, and his total hours still typically exceeded forty (40) per week as described.

36.    In or around 2011, Di Simone worked for Defendants at Callen-Lorde for approximately four (4) months as a mechanical steam/sprinkler fitter.  Di Simone typically worked Monday through Friday, between approximately eight and ten (8 - 10) hours per day at the job site, and sometimes worked on the weekends as well, for a total of between  forty-five and one-quarter (45.25) and fifty-seven and three-quarters (57.75) hours per week.

37.    In or around 2011, Di Simone worked for Defendants at Johnson Center for approximately one (1) month as a steamfitter.  During this time, Di Simone often worked at the job site Monday through Friday approximately eight (8) hours per day, for a total of approximately forty-six and one quarter (46.25) and forty-eight and three quarters (48.75) hours per week.  When Plaintiff did not work exclusively at Johnson Center, he worked on other projects for CN Plumbing while working several days at Johnson Center, and his total hours typically exceeded forty (40) per week as described.

38.    For his work at the Public Works Projects mentioned in paragraphs 32-34 above, Defendants paid Di Simone at his regular hourly rate of $10.25 per hour for all hours worked at the job sites, including hours in excess of forty (40) hours per week and eight (8) hours per day and/or weekend hours.  Di Simone was never compensated for hours worked at the Central Office or travel time between the Central Office and the job sites.  Defendants thus failed to pay Di Simone the prevailing rate of wages, overtime wages, and supplemental benefits as required by the New York City Prevailing Wage Schedules for his work on the

10

Public Works Projects.  Attached hereto as Exhibit A is a New York City Prevailing Wage Schedule indicating the prevailing wage rate, overtime rate, and supplemental benefits for a steamfitter.

39.    Despite the fact that, during the time period that he worked at Callen-Lorde, Di Simone regularly worked more than eight (8) hours per day and forty (40) hours per week and/or weekend hours at the job sites, Di Simone did not receive double his prevailing wage rate for all such overtime hours worked, as required by the New York City Prevailing Wage Schedules. *See* Exhibit A.  Di Simone also never received compensation for time spent working at the Central Office or traveling between the Central Office and the job sites.

40.    During the time period that he worked at Callen-Lorde, Di Simone received a weekly paycheck with an hourly rate of approximately $53.09 per hour as prevailing wages, in addition to his regular weekly paycheck of $10.25 per hour.  Di Simone was then required by Defendant Noto to cash the prevailing wage paycheck and pay back to him the full amount of this paycheck, for each hour that he worked on the project.  As a result of this obligatory "kickback," Di Simone was only paid his regular hourly rate of $10.25 per hour while working at Callen-Lorde.  In addition, Di Simone was required to sign a daily timesheet on behalf of himself and Salvatore Noto, for which Salvatore Noto collected prevailing wages even though he rarely worked at Callen-Lorde.  Attached hereto as Exhibit B are two paychecks, the first of which is from Defendants to Di Simone reflecting payments to him for his work on a Public Works Project at the prevailing wages rate $53.09 per hour, and the second is a personal check from Di Simone to Defendants corresponding to the same pay period, demonstrating the manner by which Di Simone was required to pay back to Defendants the total amount of prevailing wages received during that week.

11

41.     During the time in which Di Simone worked on the Public Works Projects, he was frequently supervised by Pen Enterprises' supervisors Nafiz "Doe," John "Doe," and Defendants E. Ettedgui and P. Ettedgui.   These individuals would often oversee the Public Works Projects and set Di Simone's weekly schedule.   While working at Callen-Lorde, Di Simone complained to John "Doe" regarding unpaid prevailing wages and "kickbacks."  John "Doe" then complained to Defendants E. Ettedgui and P. Ettedgui on behalf of Di Simone, which resulted in John "Doe" getting fired.   Moreover, Defendant P. Ettedgui yelled at and threatened Di Simone that if he continued complaining about unpaid prevailing wages he and his family "*would have problems.*"   Pen Enterprises was thus in charge of the day-to-day operations of the Public Works Projects, along with CN Plumbing, and they were well aware that Di Simone was not getting paid the prevailing rate of wages or supplemental benefits as required by the New York City Prevailing Wage Schedules for his work on the Public Works Projects.

42.     Throughout the Di Simone Employment Period, including the time in which Di Simone worked on the Public Works Projects, he complained on numerous occasions to Defendant Noto regarding unpaid overtime wages, prevailing wages, and illegal "kickbacks," to which Noto often replied, "*If you don't like it, you can leave.*"  The last time Di Simone complained to Noto, Noto responded, "*You don't know what you're getting yourself into… you will get in trouble,*" and he told Di Simone to get out of his office.  Defendants not only failed to pay the legally-mandated prevailing wages but also threatened Di Simone when he complained about it such that Di Simone felt threatened and seriously concerned about his safety and his family's safety.

43.     Upon information and belief, during the time in which Di Simone worked at

12

Bellevue Hospital, Kings County Supreme Court, and James Weldon Johnson Community Center, Rocco Noto (Defendant Noto's brother) collected prevailing wages even though he rarely worked at any of the Public Works Projects mentioned above.

44.     Plaintiff's work was performed in the normal course of the Defendants' business and was integrated into the business of Defendants.

45.     The work performed by Plaintiff required little skill and no capital investment.

46.     The work performed by Plaintiff did not require the exercise of independent business judgment.

47.     Defendants have simultaneously employed other individuals like Plaintiff during the relevant time periods and continuing until today, to perform work as mechanical plumbers/steamfitters at Defendants' work sites.  As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery.

48.     Like Plaintiff, Defendants' other employees were required to work for Defendants in excess of forty (40) hours each week, yet Defendants failed to pay Plaintiffs and their other employees overtime compensation for hours worked in excess of forty (40) hours per workweek.  Defendants' other employees were also required to perform work at the Central Office in the morning and afternoon for several hours per week in addition to forty (40) or more hours spent working at job sites.  This refusal to pay Plaintiff and Defendants' other employees overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' employees.

49.     Defendants entered into contracts with public entities which obligated Defendants to pay Plaintiff and Collective Action Members at or above the local prevailing

wage rates, including any required supplementary benefits and overtime premiums for hours worked in excess of forty (40) per week, eight (8) hours per day, and hours worked on Saturday and Sunday.  Defendants' failure to pay Plaintiff these prevailing wage rates, supplementary benefits, and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

50.     As employees of Defendants who were assigned to work on Defendants' publicly financed projects, Plaintiffs and the collective action members were intended third-party beneficiaries of Defendants' public works contracts.

51.     Defendants failed to pay Plaintiff and the collective action members at the appropriate prevailing wage rates for their publicly financed contracts, yet upon information and belief, Defendants were compensated under these contracts as though they had paid the appropriate prevailing wage rates to Plaintiff and the members of the collective action.

52.     Upon information and belief, throughout the Collective Action Period and during the course of Plaintiff's own employment, Defendants failed to maintain accurate and sufficient time records.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – FAILURE TO PAY OVERTIME**

53.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

54.     As a result of Defendants' failure to compensate its employees, including Plaintiff and the Collective Action Members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have

14

violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a), for which Plaintiff and the Collective Action Members are entitled to relief pursuant to 29 U.S.C. § 216(b).

55.     As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

56.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PAY OVERTIME

57.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein. Defendants violated Plaintiff's rights by failing to pay him overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours (40) per week, in violation of the NYLL and its regulations.

58.     The Defendants' NYLL violations have caused Plaintiff irreparable harm for which there is no adequate remedy at law.

59.     As a result of Defendants' failure to compensate its employees, including Plaintiff, at a rate not less than one and one-half times the regular rate of pay for hours worked in excess of forty (40) per week, Defendants have violated the NYLL, § 650 *et seq.*, for which Plaintiff is entitled to relief.

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID WAGES**

60.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein. Defendants entirely failed to pay Plaintiff for certain hours worked each week.

61.     Defendants' failure to pay Plaintiff at their agree-upon wage rates for all hours worked constitutes a violation of, inter alia, NYLL §§ 191 and 198.

62.     Due to Defendants' NYLL violations, Plaintiff is entitled to recover from Defendants his unpaid compensation at no less than the minimum wage for all hours worked, interest, liquidated damages, reasonable attorneys' fees, and the costs and disbursements of this action pursuant to NYLL §§ 663(1) *et seq*.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – ILLEGAL KICKBACKS**

63.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

64.     Defendants required Plaintiff to pay Defendants their prevailing wages in the form of a "kickback," in violation of New York Labor Law § 198-b.

65.     Defendants' failure to comply with New York Labor Law's prohibition on kickbacks caused Plaintiff to suffer loss of wages and interest thereon.

**FIFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**

66.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

67.     Upon information and belief, the public works contracts entered into by

16

Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work pursuant to such contracts.

68.     Those prevailing rates of wages and supplemental benefits were made part of the public works contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts.

69.     Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into between Defendants and certain public entities.

70.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, he is entitled to relief from Defendants for breach of contract under New York common law of contracts.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(Pled in the Alternative)**

71.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

72.     Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

73.     Equity and good conscience require that Defendants pay restitution to Plaintiff.

74.     Upon information and belief, when Defendants entered into the public works contracts, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to these contracts.

75.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff is entitled to relief from Defendants under New York's common law of unjust enrichment.

**SEVENTH CAUSE OF ACTION**
**QUANTUM MERUIT**
**(Pled in the Alternative)**

76.     Plaintiff, on behalf of himself and the Opt-in Plaintiffs, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

77.     Plaintiff provided valuable services to Defendants on prevailing wage projects for which Plaintiff expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York City prevailing wage schedules.

78.     As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services he rendered, he is entitled to relief from Defendants under New York's common law of quantum meruit.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

a.   Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative members of the Collective Action, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

18

b.  An order tolling the relevant statutes of limitations;

c.  An order declaring that Defendants violated the FLSA;

d.  An order declaring that Defendants' violations of the FLSA were willful;

e.  An order declaring that Defendants violated the NYLL;

f.  An award of overtime compensation due under the FLSA and NYLL;

g.  An award of damages arising out of the non-payment of wages under the FLSA and NYLL;

h.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216 and the NYLL and supporting regulations;

i.  An order declaring that Defendants are guilty of unjust enrichment and breach of contract under New York common law;

j.  An award of wages at the required prevailing wage rate, along with daily overtime premiums, weekend premiums, supplemental benefits and such other benefits required to be paid to Plaintiff pursuant to Defendants' contracts with public entities;

k.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated:  New York, New York
February 7, 2014

PELTON & ASSOCIATES PC


By: _/s/ Brent E. Pelton_
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative collective*

July 25, 2013
Page 6

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of C.N. Plumbing and and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees, affiliates and/or general contractors to pay me overtime premiums and prevailing wage as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct.   I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


_____     _____         _____
       Signature             Date                            Printed Name