**PELTON & ASSOCIATES PC**
Brent E. Pelton
Taylor B. Graham
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
*Attorneys for Plaintiff and the putative collective*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GIOVANNI DI SIMONE, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiff,** | |
| -against- | **ECF** |
| **CN PLUMBING, INC., PEN ENTERPRISES, INC., CALOGERO NOTO, ESTHER ETTEDGUI and PHILIP ETTEDGUI, Jointly and Severally,** | **13 Civ. 5088 (JG) (VVP)** |
| **Defendants.** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS. ...............................................................................................1

ARGUMENT ................................................................................................................6

    I.     LEGAL STANDARD.....................................................................................6

    II.    THE AMENDED PLEADINGS ARE CONSISTENT AND
          ADEQUATE......................................................................................6

    III.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY DETAILED TO
          STATE A CLAIM FOR UNPAID OVERTIME....................................................9

    IV.   PLAINTIFF ADEQUATELY PLEADS BREACH OF
          CONTRACT FOR PREVAILING WAGES .........................................................11

    V.    UNJUST ENRICHMENT AND QUANTUM MERUIT ARE
          LEGITIMATE ALTERNATIVE PLEADINGS ...................................................13

          1.  Pleadings in the Alternative are Proper ................................................13

          2.  Plaintiff Has Sufficiently Pled Unjust Enrichment..............................14

    VI.   PLAINTIFF'S STATE LAW CLAIMS DO NOT
          PREDOMINATE OVER FEDERAL CLAIMS .................................................16

CONCLUSION..............................................................................................................17

## **TABLE OF AUTHORITIES**

**CASES**

*Agency Constr. Corp. v. Hudacs*,
   205 A.D. 980, 613 N.Y.S.2d 974 (3d Dep't 1994) ..................................................15

*Altaire Pharms., Inc. v. Rose Stone Enters.*,
   No. 13-CV-4373, 2013 U.S. Dist. LEXIS 170411 (E.D.N.Y. Dec. 3, 2013) ..........14

*Artica v. J.B. Custom Masonry & Concrete, Inc.*,
   No. 09-CV-3796, 2012 U.S. Dist. LEXIS 103272 (E.D.N.Y. July 16, 2012)..........17

*Barris v. Hamilton*,
   No. 96-CV-9541, 1999 U.S. Dist. LEXIS 7225 (S.D.N.Y. May 17, 1999) ..............7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................6

*Bernadotte v. New York Hosp. Med. Ctr. of Queens*,
   No. 13-CV-965, 2014 U.S. Dist. LEXIS 26115 (E.D.N.Y. Feb. 28, 2014)..............7

*Bondi v. Bank of Am.*,
   412 F.Supp.2d 392 (S.D.N.Y. 2006).........................................................................8

*Bugio and Campofelice, Inc. v. NYS Dept' of Labor*,
   107 F.3d 1000 (2d Cir. 1997)..................................................................................16

*Canarsie Plumbing & Heating Corp. v. Goldin*,
   151 A.D.2d 331, 542 N.Y.S.2d 588 (1st Dep't 1989) ............................................16

*Carver v. Nassau County Interim Finance Auth.*,
   730 F.3d 150 (2d Cir. 2013).....................................................................................17

*Cassin v. Prudential Ins. Co. of Am., Inc.*,
   No. 04-CV-2913, 2004 U.S. Dist. LEXIS 20975 (S.D.N.Y. Oct. 19, 2004) ............7

*Clopay Plastic Prods Co. v. Excelsior Packaging Group, Inc.*,
   No. 12-CV-5262, 2013 U.S. Dist, LEXIS 172448 (S.D.N.Y. Dec. 6, 2013) ..........11

*Collition v. Cravath, Swaine & Moore LLP.*,
   No. 08-CV-400, 2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. 2008)............................8

*Cook v. Amedisys, Inc.*,
   No. 12-CV-1082, 2013 U.S. Dist. LEXIS 50136 (D.Conn. Apr. 8, 2013).............10

*Conley v. Gibson*,
    355 U.S. 41 (1957)................................................................................6

*Cruz v. Rose Assocs., LLC*,
    No. 13-CV-112, 2013 U.S. Dist. LEXIS 49755 (S.D.N.Y. Apr. 5, 2013) ..............................10

*DeJesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013)................................................................... 9-10

*Fernandez v. Chertoff*,
    471 F.3d 45 (2d Cir. 2006)..........................................................................6

*Igene v. Miracle Security, Inc.*,
    No. 12-CV-149, 2013 U.S. Dist. LEXIS 143015 (E.D.N.Y. Oct. 2, 2013)...................... 16-17

*Jofen v. Epoch Biosciences, Inc.*,
    2002 U.S. Dist. LEXIS 12189 (S.D.N.Y. June 26, 2002).........................................6

*Jones v. E. Brooklyn Sec. Servs. Corp.*,
    No. 11-CV-1021, 2012 U.S. Dist. LEXIS 110713 (E.D.N.Y. Aug. 7, 2012)...................12, 14

*Kermanshah v. Kermanshah*,
    580 F.Supp.2d 247 (S.D.N.Y. 2008)........................................................... 7-9

*Kilkenny v. Law Office of Cushner & Garvey, LLP.*,
    No. 08-CV-588, U.S. Dist. LEXIS 64653 (S.D.N.Y. May 7, 2012) .................................8

*Konski Engineers, P.C. v. Comm'r of Labor of the State of New York*,
    229 A.D.2d 950, 645 N.Y.S.2d 239 (4th Dep't 1996)............................................16

*Love v. Fleshman Masonry, Ltd.*,
    No. 13-CV-183, 2013 U.S. Dist. LEXIS 150928 (S.D. Ohio, Oct. 21, 2013).......................11

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
    711 F.3d 105 (2d Cir. 2013)................................................................ 9-11

*McDowell v. Cornell Univ*,
    No. 03-CV-286, 2004 U.S. Dist. LEXIS 1312 (N.D.N.Y. Jan. 27, 2004)...............................7

*Mendez v. United States Nonwovens Corp.*,
    No. 12-CV-5583, 2014 U.S. Dist. LEXIS 28451 (Mar. 5, 2014) ...........................10

*Multi-Pak Sales Corp. v. Comptroller of N.Y.*,
    212 A.D.2d 408, 622 N.Y.S.2d 41 (1st Dep't 1995) ............................................16

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
    723 F.3d 192 (2d Cir. 2013)..................................................................10

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
    102 F.3d 660 (2d Cir. 1996)..................................................................................14

*Perry v. City of New York*,
    No. 13-CV-1015, 2013 U.S. Dist. LEXIS 177396 (S.D.N.Y. Dec. 17, 2013) .......................11

*Price v. Socialist People's Libyan Arab Jamahirya*,,
    389 F.3d 192 (D.C. Cir. 2004)..................................................................................8

*Ramos v. SimplexGrinnell LP*,
    796 F.Supp.2d 346, 366 (E.D.N.Y. 2011) ...........................................................12

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
    No. 05-CV-10889, 2007 U.S. Dist. LEXIS 21670 (S.D.N.Y. Mar. 26, 2007) .......................13

*Streit v. Bushnell*,
    424 F.Supp.2d 633 (S.D.N.Y. 2006)...........................................................................8

*Taj Airconditioning & Refrigeration Co. v. Goldin*,
    158 A.D.2d 350 (1990) (1st Dep't 1990)..............................................................15

*Trinidad v. Pret A Manger (USA) Ltd.*,
    No. 12-CV-6094, 2013 U.S. Dist. LEXIS 97544 (S.D.N.Y. July 11, 2013) .........................10

*Vertex Constr. Corp. v. T.F.J. Fitness LLC*,
    No. 10-CV-683, 2011 U.S. Dist. LEXIS 135453 (E.D.N.Y. Nov. 23, 2011).........................14

*Wallace v. New York City Dep't of Corrections*,
    No. 95-CV-4404, U.S. Dist. LEXIS 22368, at *4 (E.D.N.Y. Oct. 21, 1996)..........................8

*Wilk v. Health Care Servs.*,
    No. 10-CV-5530, 2012 U.S. Dist. LEXIS 21630 (E.D.N.Y. Feb. 21, 2012)...........................14

STATUTES, RULES, AND REGULATIONS

New York Labor Law
    § 198-B.....................................................................................................15
    § 220.................................................................................................13, 16
    § 223.................................................................................................15, 16

Federal Rule of Civil Procedure 8(d)(2) ....................................................................13

## PRELIMINARY STATEMENT

Named Plaintiff Giovanni Di Simone ("Di Simone" or "Plaintiff") respectfully submits this Memorandum of Law in support of Plaintiff's Opposition to the Pen Defendants' Motion to Dismiss the Amended Complaint ("Plaintiffs' Opposition").

In their motion to dismiss, the Pen Defendants rely on mischaracterizations and selective reading of the pleadings in an attempt to convince the Court at this early stage in the litigation to throw out valid claims for unpaid overtime and prevailing wages for which they are liable. Plaintiff has more than given the Pen Defendants fair notice of what his claims are and the grounds upon which these claims rest, easily meeting Rule 8's pleading requirements as interpreted by the U.S. Supreme Court and the Second Circuit.  Moreover, claims for unpaid prevailing wages are routinely brought in conjunction with unpaid overtime claims in federal court against both prime and sub-contractors.  Such issues of liability are well-settled and thus are not novel or complex to necessitate adjudication in state court.

The level of pleading that the Pen Defendants appear to demand from Plaintiffs is simply not required and the Pen Defendants' motion should be denied.

## STATEMENT OF FACTS

Plaintiff initiated the underlying lawsuit by filing a Class and Collective Action Complaint on September 12, 2013. (Doc. 1 ("Orig. Compl.")).  Plaintiff worked as a mechanical sprinkler plumber and steamfitter for Defendants' sprinkler contractor business, performing work during his employment with Defendants on numerous public works projects.  Defendant CN Plumbing entered into contracts with Pen Enterprises to provide subcontractor services for Pen Enterprises, an air conditioning contractor focusing primarily on governmental and public

projects in the New York City region.  Plaintiff was employed by Defendants from on or about August 15, 2005 through on or about March 26, 2013.

**Hours Worked by Plaintiff at Job Sites**

Plaintiff has consistently alleged the number of hours that he worked for Defendants both in general and on specific prevailing wage job sites.  Di Simone worked five (5) days per week, and he worked at the job sites between 7:00 am and 3:00 and 3:30 pm, with a fifteen to thirty (15-30) minute meal break, for a total of eight (8) hours per day and forty (40) hours per week on site, except when he worked at Callen-Lorde. (Orig. Compl. ¶ 27; Doc. 15 ("Am. Compl.") ¶ 29).[1]  When Di Simone worked on non-prevailing wage job sites, he worked at job sites eight (8) hours per day, five (5) days per week, for a total of forty (40) hours per week on site. (*Id.*)  At Bellevue Hospital, Di Simone worked at the job site Monday through Friday, eight (8) hours per day, for a total of forty (40) hours per week on site. (Orig. Compl. ¶ 29; Am. Compl. ¶ 33).[2]  At Kings County Supreme Court, Di Simone worked at the job site Monday through Friday, eight (8) hours per day, for a total of forty (40) hours per week on site. (Orig. Compl. ¶ 30; Am. Compl. ¶ 35).[3]

At Callen-Lorde, Di Simone worked at the job site between eight and ten (8-10) hours per day Monday through Friday and sometimes weekend hours as well for a total of forty to fifty

---

[1] "Throughout the Di Simone Employment Period, Di Simone typically worked *at construction job sites* Monday to Friday, between approximately 7:00 am and 3:00 or 3:30 pm, and sometimes later." (Am. Compl. ¶ 29) (emphasis added).

[2] "Di Simone worked for Defendants at Bellevue Hospital… During this time, Di Simone often worked *at the job site* Monday through Friday approximately eight (8) hours per day…" (Am. Compl. ¶ 33) (emphasis added).

[3] "In or around 2010, Di Simone worked for Defendants at the Kings County Supreme Court… Di Simone typically often *at the job site* Monday through Friday, approximately eight (8) hours per day." (Am. Compl. ¶ 35) (emphasis added).  Plaintiffs note that "often" in this sentence is a typographical error that should read "worked."

(40-50) hours per week on site. (Orig Compl. ¶ 31; Am. Compl. ¶¶ 30, 36).[4]  Plaintiff never received overtime premiums for hours worked in excess of forty (40) per week and did not receive any wages at all for between two (2) and three (3) hours per week worked at the Callen-Lorde job site. (Am. Compl. ¶ 30).

Since filing the Original Complaint, Plaintiff has received payroll documents and has recalled the names of other prevailing wage job sites where he worked.  Specifically, Plaintiff worked at the Bronx Psychiatric Hospital job site Monday through Friday, eight (8) hours per day, for a total of forty (40) hours per week (Am. Compl. ¶ 34)[5] and worked at the Johnson Center job site Monday through Friday, eight (8) hours per day, for a total of forty (40) hours per week on site. (Am. Compl. ¶ 37).[6]  In addition, Plaintiff specified in the Amended Complaint that when he worked on certain prevailing wage jobs, namely Bellevue Hospital, Bronx Psychiatric Hospital, Johnson Center and Kings County Supreme Court, he worked some days on prevailing wage projects and some days on non-prevailing wage projects. (Am. Compl. ¶¶ 33-35, 37).  Even when Plaintiff did not work exclusively on prevailing wage job sites, he continued to work *at job sites* Monday through Friday, eight (8) hours a day for a total of forty (40) hours per week, not including the time spent working at the Defendants' Central Office. (Am. Compl. ¶¶ 33-35, 37).

---

[4] "While Di Simone worked at the Callen-Lorde prevailing wage project, Defendants sometimes required Di Simone to spend up to approximately fifty (50) hours per week working *at the job sites, not including the time spent at the Central Office or traveling between the Central Office and the job sites.*" (Am. Compl. ¶ 30) (emphasis added).    "In or around 2011, Di Simone worked for Defendants at Callen-Lorde… Di Simone typically worked Monday through Friday, between approximately eight and ten (8-10) hours per day *at the job site* and sometimes worked on the weekends as well." (Am. Compl. ¶ 36) (emphasis added).

[5] "Di Simone worked for Defendants at Bronx Psychiatric Hospital… During this time, Di Simone often worked *at the job site* Monday through Friday approximately eight (8) hours per day." (Am Compl. ¶ 34) (emphasis added).

[6] "In or around 2011, Di Simone worked for Defendants at Johnson Center… During this time, Di Simone often worked *at the job site* Monday through Friday approximately eight (8) hours per day." (Am. Compl. ¶ 37) (emphasis added).

**Hours Worked by Plaintiff at CN Plumbing's Central Office**

Plaintiff also alleged in the Amended Complaint that, in addition to the work that he performed at the job sites, he was required to perform work at the Central Office of CN Plumbing, located in Ridgewood, New York (the "Central Office") in the mornings and afternoons. (Am. Compl. ¶ 27).  Plaintiff was never paid for this work time or for travel time between the Central Office and the job sites, and Plaintiff did not understand at the time of filing the Original Complaint that such time should be considered work. (*Id*.).  Thus, the calculations of the total hours worked per week by Plaintiff that appear in the Amended Complaint consist of: (i) time spent at the Central Office, (ii) time spent traveling between the Central Office and job sites, and (iii) time at the job sites -- measured as the lapse in time between his arrival at the Central Office in the morning (or the job site, when he reported directly to the job site from home) and his departure from the Central Office in the evening.

Plaintiff was consistently required to report to the Central Office in the morning at approximately 6:45 am to load large tools, machinery and materials that were stored at the Central Office into trucks, except when he worked on specified prevailing wage projects. (*Id*.).  He was also typically required to return to the Central Office in the evening to report on the tasks performed that day, make a list of tools and materials he needed for the following day, and clean and unload the tools, machinery and trucks until between 4:00 and 4:30 p.m. (*Id*.).  Therefore, when Plaintiff worked at non-prevailing wage jobs and at the Johnson Center, Plaintiff's total continuous workday typically lasted between nine and one-quarter (9.25) and nine and three-quarters (9.75) hours per day, five (5) days  per week, for a total of forty-six and one quarter (46.25) and forty-eight and three-quarters (48.75) hours per week. (Am. Compl. ¶¶ 27, 37).

4

When Plaintiff worked at the remaining prevailing wage projects, specifically Bellevue Hospital, Bronx Psychiatric Hospital, Callen-Lorde and Kings County Supreme Court, he was consistently required to report to the Central Office one (1) morning per week and every afternoon. (Am. Compl. ¶ 28).  As a result, when Plaintiff worked at Bellevue Hospital, Bronx Psychiatric Hospital and Kings County Supreme Court, he typically worked between forty-five and one-quarter (45.25) hours and forty-seven hours per week (47.75).  His continuous workday lasted between nine (9) and nine and one-half (9.5) hours on days when he reported to the Central Office only in the afternoon, plus between nine and one-quarter (9.25) and nine and three-quarters (9.75) hours on the one (1) day per week that he also reported to the Central Office in the morning. (Am. Compl. ¶¶ 33-35).  When Plaintiff worked at Callen-Lorde, he worked between forty (40) and fifty (50) hours per week at the job site plus time at the Central Office as discussed above, for a total continuous workday that lasted between forty-five and one-quarter (45.25) and fifty-seven and three-quarters (57.75) hours per week. (Am. Compl. ¶ 36).

**Prevailing Wages and Defendants' Kickback Scheme**

Plaintiff has alleged that he was never paid at the prevailing wage rates for any of the work he performed for Defendants and never received overtime rates required by the governing prevailing wage schedules. (Orig. Compl. ¶ 32; Am. Compl. ¶ 38).  Instead, he was paid his regular rate of $10.25 per hour throughout the entirety of his employment with Defendants for most, though not all, of the hours worked at the job sites. (*Id.*).

While Plaintiff worked on the Callen-Lorde prevailing wage project, he received a paycheck for prevailing wage rates but was forced by his employers to cash the prevailing wage paycheck and pay back to his supervisor, Defendant Noto, the difference between the prevailing wage rate, $53.09, and his normal hourly rate, $10.25. (Am. Compl. ¶ 40).  Although Defendant

Noto demanded the kickback from Plaintiff, the Pen Defendants had full knowledge of the scheme and authorized the illegal kickback. (Am. Compl. ¶ 41).  Plaintiff complained to one of his supervisors who worked for the Pen Defendants, John "Doe," who in turn complained to E. Ettedgui and P. Ettedgui about the kickbacks Plaintiff was forced to make. (*Id.*)  P. Ettedgui fired John for complaining and threatened Di Simone that Di Simone and his family "would have problems" if Di Simone continued to complain about prevailing wage kickbacks. (*Id.*)

## ARGUMENT

### I.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Furthermore, "the facts pleaded in a complaint should be construed in favor of the plaintiff, and a case should be dismissed "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient.'" *Jofen v. Epoch Biosciences, Inc.*, 2002 U.S. Dist. LEXIS 12189, at *3 (S.D.N.Y. June 26, 2002) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

Here, as shown below, the allegations in Plaintiff's Amended Complaint meet the standard necessary to survive a motion to dismiss.

### II.    THE AMENDED PLEADINGS ARE CONSISTENT AND ADEQUATE

In the Amended Complaint, Plaintiff added allegations regarding the locations of two (2) additional prevailing wage projects where he worked and additional blocks of time that he

worked away from the job sites.  Plaintiff did not change information contained in the Original Complaint regarding the number of hours that he worked at job sites in general or at any particular prevailing wage job site.  Instead, Plaintiff simply alleged with more specificity the hours worked in his continuous workday, including work performed at the Central Office and the job sites.

Such supplemention is acceptable since "[a]n amended complaint need not be consistent with all prior pleadings." *Cassin v. Prudential Ins. Co. of Am., Inc.*, No. 04-CV-2913, 2004 U.S. Dist. LEXIS 20975, at *7 (S.D.N.Y. Oct. 19, 2004); *see also McDowell v. Cornell Univ.*, No. 03-CV-286, 2004 U.S. Dist. LEXIS 1312, at *6 (N.D.N.Y. Jan. 27, 2004) (rejecting defendants' argument that "plaintiff's original complaint should be considered by the court because of the doubt it casts upon the allegations made in the amended complaint").  Since Plaintiff has submitted the Amended Complaint, it "supersedes [the] original complaint," which "remains only as an evidentiary admission that may be admissible at trial." *Cassin*, 2004 U.S. Dist. LEXIS 20975, at *7; *see also Barris v. Hamilton*, No. 96-CV-9541, 1999 U.S. Dist. LEXIS 7225 at *8 (S.D.N.Y. May 17, 1999) ("...the usual and more benevolent option is to accept the superseded pleadings but allow the factfinder to consider the earlier pleadings as admissions in due course").  Such amendments are "not uncommon" and "serve a useful purpose in avoiding unnecessary motion practice" even though "some later pleadings... necessarily may be at odds with allegations the party asserted in the original pleadings." *Streit v. Bushnell*, 424 F.Supp.2d 633, 640 n. 4 (S.D.N.Y. 2006); *see also Bernadotte v. New York Hosp. Med. Ctr. of Queens*, No. 13-CV-965, 2014 U.S. Dist. LEXIS 26115, at *15-16 (E.D.N.Y. Feb. 28, 2014) (declining to consider prior pleadings where "[t]aken as a whole," the multiple pleadings were "not congruous" but "not in such direct contradiction" with one another); *Kermanshah v.*

*Kermanshah*, 580 F.Supp.2d 247, 266 (S.D.N.Y. 2008) (on motion to dismiss, accepting amended pleadings that "can be described at clarifying, but, at most, inconsistent"); *Bondi v. Bank of Am.*, 412 F.Supp.2d 392, 400-401 (S.D.N.Y. 2006) (rejecting defendants' argument that "[plaintiffs] are bound by their admission in the original complaint and… may not file an amended complaint that contradicts those prior factual allegations" where the amended complaint "ha[d] been revised extensively" to emphasize certain elements of the claim).   In short, to preclude Plaintiff from relying upon the Amended Complaint "runs against the letter and spirit of the flexible pleading standards embodied in [the] Federal Rules of Civil Procedure." *Streit,* 424 F.Supp.2d at 640 n. 4.

The cases cited by Defendants are extreme examples where amended pleadings allege fundamentally different facts from prior pleadings, such as: whether an employee was hired to "organize a disorganized office," ensure compliance with state law and assist in drafting legal papers, or performed routine office duties such as answering phones, filing, typing, cleaning and making coffee, *Kilkenny v. Law Office of Cushner & Garvey, LLP*, No. 08-CV-588, U.S. Dist. LEXIS 64653, at *16, 20 (S.D.N.Y. May 7, 2012); whether an employee worked only as an attorney or spent approximately 85% of his time providing non-attorney "specialist" services, *Collition v. Cravath, Swaine & Moore LLP*, No. 08-CV-400, 2008 U.S. Dist. LEXIS 74388, at *18-19 (S.D.N.Y. 2008); or whether a situation that occurred was an "aberration" or constituted the institution's policy. *Wallace v. New York City Dep't of Corrections*, No. 95-CV-4404, U.S. Dist. LEXIS 22368, at *4 (E.D.N.Y. Oct. 21, 1996).[7]   In contrast, Plaintiff's Amended Complaint supplements Plaintiff's allegations regarding hours worked at job sites with hours

---

[7] The Court in *Price v. Socialist People's Libyan Arab Jamahirya*, 389 F.3d 192, 195 (D.C. Cir. 2004) did not discuss differences between pleadings at all and rejected defendant's argument that an amended complaint was discredited by inconsistent statements made in a deposition in a prior action.

worked at the Central Office.  Plaintiff, having never been paid for time spent at the Central Office (Am. Compl. ¶ 27), did not consider at the time that the original pleadings were filed that such time could qualify as work for the purposes of this action.

The additional allegations in the Amended Complaint are not "changes that directly contradict the facts set forth in the original complaint." *Kermanshah*, 580 F.Supp.2d at 266.  To the contrary, Plaintiff's additions create a fuller picture of the conditions of his employment with Defendants and reflect Plaintiff's deeper understanding of the nature of his overtime claim.  The Amended Complaint does not contradict, fundamentally or otherwise, Plaintiff's allegations from the outset of this lawsuit that he is owed compensation for unpaid overtime premiums and prevailing wages.

## III.   PLAINTIFF'S CLAIMS ARE SUFFICIENTLY DETAILED TO STATE A CLAIM FOR UNPAID OVERTIME

In the Amended Complaint, Plaintiff has given a precise count of the number of hours that he worked during his employment with Defendants, including specifically during his employment at five (5) prevailing wage projects, as well as the times that his continuous workday began and concluded.  He has detailed his position and the type of work that he performed, both on the job site and at the Central Office.

The cases cited by Defendants affirm the commonsense rule that plaintiffs bringing overtime claims must "do more than repeat the language of the statute" *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013); they must "provide sufficient factual matter to state a plausible claim that they worked compensable overtime in a workweek longer than 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 105, 114 (2d Cir. 2013); s*ee also DeJesus*, 726 F.3d at 89 (Plaintiff who stated solely that she worked more than forty hours per week without receiving overtime premiums "alleg[ed] no particular facts sufficient to raise a

plausible inference of an FLSA overtime violation"); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192, 201 (2d Cir. 2013) (plaintiffs must provide sufficient information "to support a reasonable inference that they worked more than forty hours in a given week").

However, the cases do not require that Plaintiff cite specific dates, give a count of the number of weeks that he worked or even provide "an approximate number of overtime hours," although Plaintiff has in fact recounted the number of months during particular years that he worked on the prevailing wage job sites.[8] *Nakahata*, 723 F.3d at 201 n. 10; *see also DeJesus*, 726 F.3d at 90 ("…this Court has not required plaintiffs to keep careful records and plead their hours with mathematical precision").  In contrast to the plaintiffs in *Lundy*, Plaintiff here has identified with specificity those "workweek[s] in which [he] worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 114.

Following these recent Second Circuit decisions, complaints containing as much or substantially less information than Mr. Di Simone's continue to survive motions to dismiss. *See, e.g.*, *Cook v. Amedisys, Inc.*, No. 12-CV-1082, 2013 U.S. Dist. LEXIS 50136, at *8-9, 12-13 (D.Conn. Apr. 8, 2013) (plaintiffs alleged that they worked forty hours per week and were not compensated for overtime hours); *Cruz v. Rose Assocs., LLC*, No. 13-CV-112, 2013 U.S. Dist. LEXIS 49755, at *1-3, 8-11 (S.D.N.Y. Apr. 5, 2013) (plaintiff alleged that he worked in excess of forty hours per week and did not receive overtime pay); *Mendez v. United States Nonwovens Corp.*, No. 12-CV-5583, 2014 U.S. Dist. LEXIS 28451, at *37-38 (Mar. 5, 2014) (pleadings included plaintiffs' shift hours, days worked per weeks, and number of hours worked in certain months); *cf. Trinidad v. Pret A Manger (USA) Ltd.*, No. 12-CV-6094, 2013 U.S. Dist. LEXIS

---

[8] Am. Compl. ¶¶ 33-37 (Bellevue Hospital for 6 months in 2008 and 4 months in 2011, Bronx Psychiatric for 8 months between 2008 and 2009, Kings County Supreme Court for 7 months during 2010, Callen-Lorde for 4 months in 2011, Johnson Center for 1 month during 2011).

97544, at *27-28 (S.D.N.Y. July 11, 2013) (discussing *Lundy* in the context of granting conditional certification as to plaintiffs who clearly stated that they worked beyond forty hours for week, some of whom specified the number of hours worked per week).

As the Court found in *Perry v. City of New York*, Plaintiff's Amended Complaint sufficiently pleads overtime because "[t]he arithmetic in this case, by contrast [to *Lundy*], does support a plausible claim for overtime." *Perry v. City of New York*, No. 13-CV-1015, 2013 U.S. Dist. LEXIS 177396, at * 45 (S.D.N.Y. Dec. 17, 2013) (plaintiffs alleged that they were scheduled to work forty hours per week and on a daily basis performed tasks before and after their shifts for which they were not compensated).  In providing an exact range of hours worked per week, the times that he began and concluded work, the duties that he performed, and the duration and timing of his work on specific projects, Plaintiff has pled an overtime claim with more specificity than required by Second Circuit caselaw.

## IV.   PLAINTIFF ADEQUATELY PLEADS BREACH OF CONTRACT FOR PREVAILING WAGES

Plaintiff has alleged the existence of contracts between Pen Enterprises, as a prime contractor, and the City of New York or divisions thereof (Am. Compl. ¶¶ 19-21); the existence of prevailing wage provisions that were intended for his benefit (Am. Compl. ¶¶ 22-24); and an immediate, rather than incidental, benefit to Plaintiff such that Defendants, including the Pen Defendants, had a duty to compensate Plaintiff. (Am. Compl. ¶ 67-70).  In doing so, Plaintiff has established a claim for breach of contract as a third-party beneficiary. *See Clopay Plastic Prods Co. v. Excelsior Packaging Group, Inc.*, No. 12-CV-5262, 2013 U.S. Dist, LEXIS 172448, at *8-9 (S.D.N.Y. Dec. 6, 2013) (listing the elements of a third-party beneficiary claim for breach of contract); Defs.' Memo. of Law, at 16 (same); *see also Love v. Fleshman Masonry, Ltd.*, No. 13-CV-183, 2013 U.S. Dist. LEXIS 150928, at *11-12 (S.D. Ohio, Oct. 21, 2013) (plaintiff, having

pled that (1) defendants entered into contracts requiring the payment of prevailing wages that were intended to benefit plaintiff and (2) that he worked on prevailing wage projects, "has plausibly pled that the [Defendants] breached a contract for which he was the intended beneficiary").

Plaintiff has also specified the location of five (5) public works projects, for all of which the Pen Defendants contracted with the City of New York to provide certain contractor services, where he worked as a mechanical plumber or steamfitter and for which he is entitled to prevailing wages. (Am. Compl. ¶ 20). With this level of detail, Plaintiff's allegations "suffice to notify the defendants of the nature of [Plaintiff's] claim." *Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021, 2012 U.S. Dist. LEXIS 110713, at *22 (E.D.N.Y. Aug. 7, 2012). Particularly in the context of prevailing wage contracts,

> the relevant facts relating to the defendants' various public works contracts may be peculiarly within the knowledge of the defendants, and it will likely be readily ascertainable to the defendants whether they entered into any public works contracts and whether [Plaintiff] provided services on any of those contracts.

*Jones*, 2012 U.S. Dist. LEXIS 110713, at *22-23. Production of the contracts, particularly at this stage of the litigation, is unnecessary because even without reviewing the contracts, "it is clear that New York law requires public works contracts like those at issue here to include prevailing wage provisions." *Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346, 366 (E.D.N.Y. 2011) (denying summary judgment on breach of contract claim, finding that "plaintiffs allege… that defendant *did* enter into contracts requiring that prevailing wages be paid [and] merely seek to prove that fact by means other than admitting into evidence the contracts themselves") (emphasis in original) *questions certified on other grounds at* 740 F.3d 852 (2d Cir. 2014). In other words, the contents of the contract constitute evidence pertaining to Defendants' obligation to pay prevailing wages but are not in themselves necessary to allege a breach of contract since New

York law itself requires that prevailing wage schedules be incorporated into contracts for public works projects. *See* NYLL § 220.

Plaintiff has pled the required elements of breach of contract as a third-party beneficiary and has provided more than enough detail to notify Defendants of the nature of his claims.  It is unreasonable to expect -- as the Pen Defendants do here -- Plaintiff, a construction laborer, to have access to contracts between Defendants and the City of New York before discovery has commenced.

## V.   UNJUST ENRICHMENT AND QUANTUM MERUIT ARE LEGITIMATE ALTERNATIVE PLEADINGS

### 1.   Pleadings in the Alternative Are Proper

In addition to Plaintiff's breach of contract claim, Plaintiff has pled that he is entitled to damages pursuant to the equitable doctrines of unjust enrichment and quantum meruit based on work performed by Plaintiff for which he was not fairly compensated.  As stated in the heading for both of these counts, these causes of action are pled "in the alternative" to Plaintiff's breach of contract claim.  Such pleadings are approved by Federal Rule of Civil Procedure 8(d)(2), which provides:

> A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

*See also Randolph Equities, LLC v. Carbon Capital, Inc.*, No. 05-CV-10889, 2007 U.S. Dist. LEXIS 21670, at *15 (S.D.N.Y. Mar. 26, 2007) ("A plaintiff is not barred from pleading both a contract claim, and in the alternative, a quasi-contract or equitable estoppel claim").

As Defendants state, quasi-contractual claims are barred where "the parties have a valid, enforceable contract." (Defs.' Memo. of Law, 17).  However, Defendants also dispute that Plaintiff has alleged a valid breach of contract claim. (Defs.' Memo. of Law, Point III, 15). Since

"it is difficult to determine the validity or scope of the contract the pleading stage, courts routinely reject argument like [Defendant's] as premature." *Vertex Constr. Corp. v. T.F.J. Fitness LLC*, No. 10-CV-683, 2011 U.S. Dist. LEXIS 135453, at *11 (E.D.N.Y. Nov. 23, 2011). It is only "if this Court were to find, at a later stage of this litigation, that a 'valid and enforceable' agreement governed the subject matter at issue in plaintiff's unjust enrichment claim, [that] such claim would be barred." *Altaire Pharms., Inc. v. Rose Stone Enters.*, No. 13-CV-4373, 2013 U.S. Dist. LEXIS 170411, at *19 (E.D.N.Y. Dec. 3, 2013) (citing, *inter alia*, *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996)). Particularly because the Pen Defendants have already contested the existence of the prevailing wage contracts, Plaintiff's quasi-contractual claims should proceed. *See Wilk v. Health Care Servs.*, No. 10-CV-5530, 2012 U.S. Dist. LEXIS 21630, at *17 (E.D.N.Y. Feb. 21, 2012) ("... a quantum meruit claim may be alleged alongside a breach of contract claim where, as here, the parties dispute the existence or validity of the alleged contract").

For these reasons, Defendants' attempt to dismiss Plaintiff's equitable claims is premature at this stage.

## 2.  Plaintiff Has Sufficiently Pled Unjust Enrichment

A claim for unjust enrichment is appropriate where a plaintiff may be able to "show that the defendants made extra money on the contracts based on the expectation that they would pay wage rates and benefits they did not in fact pay." *Jones,* 2012 U.S. Dist. LEXIS 110713, at *26.

Plaintiff alleges that Pen Enterprise is a general contractor that entered into construction contracts with the City of New York or divisions thereof and thereby promised to pay prevailing wage rates to all laborers including Plaintiff. (Am. Compl. ¶¶ 19-24, 49). Plaintiff has also pled in detail the control of the Pen Defendants over Plaintiff's daily activities and the prevailing

wage projects, as well as Pen Defendants' awareness and authorization of the underpayment of Plaintiff's wages. (Am. Compl. ¶ 41).   Therefore, the possibility that the Pen Defendants received from state and local governments the prevailing wages for Plaintiff and paid only Plaintiff's regular hourly rate to CN Defendants, who in turn paid $10.25 per hour to Plaintiff, or otherwise received material benefits based on underpayment of prevailing wages to Plaintiff is concrete and sufficient to establish a claim for unjust enrichment.

## VI.   PLAINTIFF'S STATE LAW CLAIMS DO NOT PREDOMINATE OVER FEDERAL CLAIMS

Plaintiff alleges that the Defendants failed to pay Plaintiff prevailing wages while he worked on prevailing wage projects by underpaying him (Am Compl. ¶ 38), and by demanding kickbacks when he received paychecks at prevailing wage rates. (Am. Compl. ¶ 40). These allegations do not necessitate this Court making any novel or complex interpretations of state law.  Indeed, New York law is clear about the responsibility of general contractors to ensure that prevailing wages are paid correctly.

Specifically, New York Labor Law provides (1) that general contractors are responsible for a sub-contractor's failure to pay prevailing wages, NYLL § 223, and (2) that requiring kickbacks from workers, whether entitled to prevailing wages or otherwise, is a violation of New York's labor laws and any person who authorizes such kickbacks has also violated the law. *See* NYLL § 198-b.

A general contractor's "claimed lack of knowledge of [a] subcontractor's unlawful practices does not prevent it from being held responsible and liable for such noncompliance," *Taj Airconditioning & Refrigeration Co. v. Goldin*, 158 A.D.2d 350, 351 (1990) (1st Dep't 1990), because on "a public works project, both petitioner and its subcontractor [are] required to pay prevailing wages and supplements." *Agency Constr. Corp. v. Hudacs*, 205 A.D. 980, 980, 613

N.Y.S.2d 974, 947 (3d Dep't 1994) (affirming liability of prime contractor for subcontractor's failure to pay prevailing wages); *see also Bugio and Campofelice, Inc. v. NYS Dept' of Labor*, 107 F.3d 1000, 1003 (2d Cir. 1997) ("The statute makes the prime contractor on a public works project fiscally responsible for a subcontractor's failure to comply the requirements of [NYLL] § 220 "); *Konski Engineers, P.C. v. Comm'r of Labor of the State of New York*, 229 A.D.2d 950, 951, 645 N.Y.S.2d 239, 240 (4th Dep't 1996), *lv denied by* 89 N.Y.2d 802 (1996) (affirming prime contractor's liability for subcontractor's failure to make proper wage payments); *Multi-Pak Sales Corp. v. Comptroller of N.Y.*, 212 A.D.2d 408, 409, 622 N.Y.S.2d 41, 42 (1st Dep't 1995) ("the Comptroller is entitled to seek full recourse from the deficiency from the petitioner who is responsible for the violations of its subcontractor under Labor Law § 223); *Canarsie Plumbing & Heating Corp. v. Goldin*, 151 A.D.2d 331, 333-34, 542 N.Y.S.2d 588, 590 (1st Dep't 1989) (affirming liability of prime contractor for failure of sub-contractor to prevailing wage where administrative factfinder found that prime contractor had no knowledge of sub-contractor's violation).  The prevailing wage law does not limit a prime contractor's liability to simple underpayment by a subcontractor but rather extends liability to all "noncompliance or evasion" with prevailing wage requirements. NYLL § 223.  Moreover, Plaintiff further alleges that the Pen Defendants were not only aware of the illegal pay practices of CN Plumbing but authorized them by terminating an employee who complained about the kickbacks and threatening Plaintiff if he pursued the matter. (Am. Compl. ¶ 41).

In their motion, Defendants rely heavily on the Court's reasoning in *Igene v. Miracle Security*, yet the state law issue in that case is easily distinguishable from the case at bar.  The plaintiff's complaint in *Igene v. Miracle Security* raised a narrow question of whether one particular type of worker is eligible to receive prevailing wages, an issue that posed "'an

unresolved question of state law and… exceptional circumstances'" and "'implicate[d] a significant state interest," namely whether "a whole class of workers would potentially be entitled to a higher rate of pay." *Igene v. Miracle Security, Inc.*, No. 12-CV-149, 2013 U.S. Dist. LEXIS 143015, at *14 (E.D.N.Y. Oct. 2, 2013) (quoting *Carver v. Nassau County Interim Finance Auth.*, 730 F.3d 150, 153, 154 (2d Cir. 2013).  Plaintiff's Amended Complaint does not pose any unresolved questions or exceptional circumstances; to the contrary, the principle upon which his prevailing wage claims against the Pen Defendants rest is codified in New York state law and has been routinely reaffirmed by New York courts, as set forth above.

The Pen Defendants also make passing reference to a dispute over the correct wage rate that Plaintiff should have been paid for his work on prevailing wage jobs.  Any such dispute does not require interpretation of state or city prevailing wage laws but rather an application of the prevailing wage schedules to factual information regarding the duties performed by Plaintiff at various prevailing wage projects.  Federal courts are well-equipped to decide whether employees are entitled to receive prevailing wages and, if so, what rates they should receive in light of the duties they perform. *See, e.g., Artica v. J.B. Custom Masonry & Concrete, Inc.*, No. 09-CV-3796, 2012 U.S. Dist. LEXIS 103272, at *44-47 (E.D.N.Y. July 16, 2012) (recounting jury verdict on prevailing wage damages).  Despite Defendants' contentions, the Amended Complaint does not raise any novel or complex issues of state law to prevent this Court from adjudicating the federal and state claims alleged by Plaintiff in this matter.

## CONCLUSION

Based on the foregoing analyses, Plaintiff clearly pled his Amended Complaint with more than enough detail to withstand Defendants' motion to dismiss.  Accordingly, Plaintiff respectfully requests that this Court deny Defendants' motion in its entirety.

Dated: New York, New York
       March 13, 2014                    PELTON & ASSOCIATES PC


                                        By: ___/s/ Brent E. Pelton_____
                                        Brent E. Pelton (BP 1055)
                                        Taylor B. Graham (TG 9607)
                                        111 Broadway, Suite 1503
                                        New York, New York 10006
                                        Telephone: (212) 385-9700
                                        Facsimile: (212) 385-0800

                                        *Attorneys for Plaintiff and the putative collective*