| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | <u>FOR ONLINE PUBLICATION</u> |
| GIOVANNI DI SIMONE, Individually and on Behalf of all Others Similarly Situated,<br><br>                             Plaintiff,<br><br>- versus -<br><br>CN PLUMBING, INC., PEN ENTERPRISES, INC., CALOGERO NOTO, ESTHER ETTEDGUI and PHILIP ETTEDGUI,<br><br>                             Defendants. | <u>MEMORANDUM<br>AND ORDER</u><br>13-CV-5088 |

A P P E A R A N C E S:

       PELTON & ASSOCIATES, PC
             111 Broadway, Suite 1503
             New York, NY 10006
       By:    Brent E. Pelton
             *Attorneys for Plaintiff*

       BOND, SCHOENECK, & KING, PLLC
             1399 Franklin Avenue
             Garden City, NY 11530
       By:    Mark N. Reinharz
             *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Giovanni Di Simone brings this purported class action against CN Plumbing, Inc., Pen Enterprises, Inc., Calogero Noto, and Esther and Philip Ettedgui, claiming that that the defendants failed to pay him and others proper overtime wages, failed to pay prevailing wages, and engaged in an illegal kickback scheme. Di Simone alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") §§ 191, 198, 198-b, and also asserts common law claims for breach of contract, unjust enrichment, and quantum meruit. Defendants Pen Enterprises, Inc., and Esther and Philip

Ettedgui jointly move this Court to dismiss the amended complaint pursuant to Rule 12(b)(6). For the reasons explained below, defendants' motion is denied.

## BACKGROUND

A. *Factual Allegations*

Di Simone's amended complaint alleges the following facts, which I assume to be true for purposes of this motion. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

CN Plumbing is a company that installs and repairs sprinkler systems for commercial and residential buildings. Am. Compl. ¶ 18. Pen Enterprises is an air conditioning contractor for commercial and residential buildings focusing primarily on government and public projects. *Id.* ¶ 19. CN Plumbing has entered into numerous contracts as a subcontractor with Pen Enterprises as the prime contractor to provide plumbing and sprinkler services for New York City public works projects, including projects at the following locations: Bellevue Hospital; Kings County Supreme Court; Callen-Lorde Community Health Center ("Callen-Lorde"); Bronx Psychiatric Hospital; and James Weldon Johnson Community Center (the "Johnson Center"). *Id.* ¶¶ 20-21. Between August 15, 2005, and March 26, 2013, Di Simone worked as a mechanical sprinkler plumber and steamfitter for CN Plumbing, and in that capacity worked on each of the projects listed above and others.[1] *Id.* ¶ 26.

Defendant Calogero Noto is the president and owner of CN Plumbing and is responsible for the company's payroll, record keeping and day-to-day operations. *Id.* ¶ 16. Defendant Philip Ettedgui owns Pen Enterprises. *Id.* ¶ 17. He and defendant Esther Ettedugi are responsible for Pen Enterprises' payroll, record keeping and day-to-day operations. *Id*. At

---

[1] Di Simone specifies that he worked at Bellevue Hospital for approximately six months in or around 2008 and for about four months in 2011. Am. Compl. ¶ 33. He worked at Bronx Psychiatric Hospital for about eight months between 2008 and 2009. *Id.* ¶ 34. He worked at Kings County Supreme Court in 2010 for approximately seven months. *Id.* ¶ 35. In 2011, he worked at Callen-Lorde for about four months, *id.* ¶ 36, and at the Johnson Center for approximately one month. *Id.* ¶ 37.

all relevant times, the defendant companies had gross revenues in excess of $500,000, *id.* ¶ 14, and have been engaged in interstate commerce for purposes of FLSA. *Id.* ¶ 13.

While working on projects for the defendant companies, Di Simone was typically required to be at a job site from 7:00 a.m. until 3:00 or 3:30 p.m., five days per week, with a 15 to 30 minute meal break. *Id.* ¶ 29. Before going to a job site, however, Di Simone was sometimes required to report to CN Plumbing's central office (the "central office") at 6:45 a.m. in order to load tools and materials into his truck, which took between 15 and 20 minutes. *Id.* ¶ 27. When working on prevailing wage projects, specifically Callen-Lorde, Bellevue Hospital, Bronx Psychiatric Hospital, and the Kings County Supreme Court, Di Simone was required to report to the central office one morning per week. *Id.* When working on non-prevailing wage projects, Di Simone was required to report to the central office every morning before going to the job site. *Id.* For both prevailing wage and non-prevailing wage projects, Di Simone was required at the end of each workday to go to the central office to report on the work he had completed, make a list of tools and materials needed for the next day, and to clean and unload the truck, which typically took between 15 and 45 minutes. *Id.* ¶ 28.

Di Simone alleges that he was never paid for the time he spent at the central office or the time spent traveling between the central office and the various job sites. *Id.* ¶ 27. Thus, including the time spent at the central office and traveling between the central office and the job sites, Di Simone alleges that on non-prevailing wage projects he typically worked between 46.25 to 48.75 hours per week, *id.* ¶ 27, and that on prevailing wage projects (except for Callen-Lorde, which is discussed below) he worked between 45.25 and 47.75 hours per week, but was never paid for more than 40 hours of work per week.[2] *Id.* ¶ 37.

---

[2] Sometimes Di Simone would not work exclusively at one site during a given week, but he alleges that his hours and compensation during those weeks was the same as described above. *See, e.g.*, Am. Compl. ¶ 37

3

While working on the Callen-Lorde project, Di Simone was occasionally required to work at the job site approximately 50 hours per week, including work on weekends, but was always paid his normal hourly rate of $10.25 per hour for all the hours he worked at the site, including those over 40 in a given week.[3]  *Id.* ¶ 30-31.  Furthermore, on weeks that he worked more than 40 hours at the Callen-Lorde site, Di Simone was often not paid for two to three hours of his on-site work in excess of 40 hours.  *Id.* ¶ 30.

While working at the Callen-Lorde project, Di Simone received a weekly paycheck calculated based on an hourly wage of $53.09 – the prevailing wage rate.  *Id.* ¶ 40.  In addition, Di Simone would also receive a paycheck for the same work period that was calculated based on his usual, non-prevailing wage of $10.25 per hour.  *Id.*  Defendant Noto would then require Di Simone to cash the $53.09 per hour paycheck and give the entire proceeds back to Noto.  *Id.*  As a result, Di Simone only received $10.25 per hour for his work on this project, rather than the prevailing wage.  *Id.*  Di Simone was supervised at the Callen-Lorde project by, among others, the Ettedguis.  *Id.* ¶ 41.  When Di Simone complained to another supervisor about the kickback scheme being perpetrated by Noto and that supervisor complained to the Ettedguis on Di Simone's behalf, the supervisor was fired.  *Id.*  After that supervisor was fired, Philip Ettedgui told Di Simone to stop complaining about unpaid prevailing wages or he and his family would "have problems."  *Id.*  Di Simone also complained regularly to Noto about not receiving overtime or prevailing wages, and being forced to participated in the kickbacks, but was told that if he did not like it he could quit.  *Id.* ¶ 42.

---

("When Plaintiff did not work exclusively at Johnson Center, he worked on other projects for CN Plumbing while working several days at Johnson Center, and his total hours typically exceeded forty per week as described.").

[3]  Di Simone makes clear that the 50 hours per week spent working at this job site is exclusive of the time spent at the central office and traveling between the site and the central office.  Am. Compl. ¶ 31.

Di Simone claims that there are other similarly situated individuals who were denied overtime, not paid prevailing wages for public projects, and forced to pay kickbacks to Noto as described above. *Id.* ¶ 47.

B.  *Procedural History*

Di Simone filed his original complaint on September 12, 2013. ECF No. 1. On February 7, 2014, he filed an amended complaint that specified additional sites he worked at and also alleged, for the first time, the allegations described above regarding not receiving pay for the time he spent at the central office and for the time spent driving between the central office and work sites. Am. Compl., ECF No. 15. The instant motion by Pen Enterprises and the Ettedguis was filed on February 28, 2014. I heard oral argument on March 28, 2014.

## DISCUSSION

A.  *The Standard of Review*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this determination, a court should assume all well-pleaded allegations in the complaint to be true "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above a speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citation omitted)).

B.  *Analysis*

1.  *Inconsistencies Between the Original and the Amended Complaint*

The moving defendants first argue that Di Simone's amended complaint should be rejected outright because it contradicts facts pled in the original complaint. Specifically, they

5

take issue with Di Simone's additional allegations in the amended complaint that he was uncompensated for the time he was required to spend at the central office and traveling between the central office and various work sites. Defendants claim that these additional allegations contradict allegations in the original complaint that Di Simone typically worked only 40 hours per week. *See* Compl., ECF No. 1 ¶ 27. Di Simone explains that he did not realize that these required activities are considered "work" at the time the original complaint was filed. Pl. Mem. at 9.

    Courts deciding a Rule 12(b)(6) motion to dismiss have occasionally disregarded facts alleged in an amended pleading when they directly and blatantly contradict an essential factual element as pled in a previous complaint and when the court discerns an intent to manipulate the pleadings in order to avoid an argument for dismissal. *Compare Palm Beach Strategic Income, LP v. Salzman*, No. 10-CV-261, 2011 WL 1655575, at *6-7 (E.D.N.Y. May 2, 2011) *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (disregarding certain facts alleged in the third amended complaint that "blatantly" contradicted facts alleged in the three previous complaints and that were relied on in the plaintiff's briefs opposing a previous motion to dismiss), *and Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (disregarding facts alleged in an amended pleading that constituted "a transparent attempt by plaintiff to amend his pleading in order to avoid a dispositive defense") *with Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006) (declining to disregard allegedly inconsistent facts pled in an amended complaint because the claimed inconsistency was not "blatant" and did not involve an essential element of the plaintiff's cause of action). Here, the "inconsistencies" that the defendants claim exist between Di Simone's amended complaint and the original complaint are not blatant contradictions, and there is no evidence of an intent to manipulate the pleadings to avoid a dispositive defense. Accordingly, I decline to disregard any

6

allegedly inconsistent factual allegations contained in Di Simone's amended complaint. *See Streit*, 424 F. Supp. 2d at 640 n.4 (noting that it is "unsurprising" that certain corrective amendments to pleadings may contain allegations "at odds" with previous factual allegations, but declining to adopt a "harsh rule" of disregarding the amended pleadings due to such inconsistencies).

    2. *FLSA and NYLL Overtime*

The defendants next argue that Di Simone fails to state a plausible claim for relief under either FLSA or NYLL. Citing *Lundy v. Catholic Health Sys. of Long Island Inc.*, the defendants contend that Di Simone has not sufficiently alleged that he worked over 40 hours in a given week and was not compensated for at least some of the time over 40 hours. *See* 711 F.3d 106, 114 (2d Cir. 2013).

The complaint in *Lundy* did not allege "a single workweek in which [the plaintiffs] worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Id.* In sharp contrast, Di Simone's amended complaint identifies specific projects that Di Simone worked on and the approximate dates he worked those projects, and alleges that he typically worked over 40 hours per week on each of these projects and was not appropriately compensated (or compensated at all) for these overtime hours. *See* Am. Compl. ¶¶ 30-35. The specific facts alleged in the complaint here go far beyond merely "rephrasing the FLSA's formulation specifically set forth in [the statute]." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (affirming the dismissal of a complaint that "tracked the statutory language of the FLSA, lifting its numbers and rehashing its formulation, but alleging no particular facts sufficient to raise a plausible inference of an FLSA overtime violation"). Courts in this circuit do not require plaintiffs in cases like this to "keep careful records and plead their hours with mathematical precision," *id.* at 90, and here Di Simone has provided the necessary factual

7

context to assert a plausible FLSA overtime claim. Accordingly, the moving defendants' motion to dismiss Di Simone's FLSA overtime claim is denied.

Because the plausibility standard for NYLL overtime claims is the same as for FLSA claims, Di Simone's NYLL claims are sufficiently pled for the reasons discussed above. *See Dejesus*, 726 F.3d at 89.

### 3. *Breach of Contract*

Di Simone asserts a breach of contract claim based on (1) the defendants' obligation to pay prevailing wages under their public works contracts, and (2) Di Simone's third-party beneficiary status under those contracts. Defendants move to dismiss this claim on the ground that Di Simone "never identifies the specific contract or contracts at issue." Defs.' Mem. at 15. Defendants also argue that it is unclear whether Di Simone was an intended beneficiary of these alleged contracts.

To plead a viable claim for breach of contract under New York law, "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation omitted). To properly plead a claim that he was an intended third-party beneficiary, Di Simone must sufficiently allege (a) that a contract exists between other parties, (b) that the contract was intended for Di Simone's benefit, and (c) that the benefit to Di Simone is immediate, not incidental. *See Clopay Plastic Prods. Co., Inc. v. Excelsior Packaging Grp., Inc.*, No. 12-CV-5262, 2013 WL 6388444, at * 3 (S.D.N.Y. Dec. 6, 2013).

I conclude that Di Simone has sufficiently alleged that the public works contracts existed, Am. Compl. ¶¶ 19-21, that he adequately performed work on those contracts, *id.* ¶¶ 26-37, that the defendants violated the contracts by failing to pay the relevant prevailing wages, *id.* ¶

8

25, and that Di Simone was thereby damaged. *Id.* ¶ 31. He has also adequately pled that he was an intended third-party beneficiary to these contracts, *id.* ¶¶ 22-24, and that the benefit to him was immediate, not incidental. *Id.* Although Di Simone's allegations regarding the public works contracts are spare, they suffice to notify the defendants of the nature of his claim. *See Twombly*, 550 U.S. at 555 (Rule 8 requires that the plaintiff's pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original)); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[Rule 8] is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery."). This is particularly true here, where the relevant facts relating to the defendants' various public works contracts are uniquely within the knowledge of the defendants, and it will likely be readily ascertainable to the defendants whether they entered into any public works contracts and whether Di Simone provided services on any of those contracts. *See Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021, 2012 WL 3235784, at *6 (E.D.N.Y. Aug. 7, 2012); *see also Love v. Fleshman Masonry, Ltd.*, No. 13-CV-183, 2013 WL 5725977, at 4 (S.D. Ohio Oct. 21, 2013) (denying motion to dismiss claim that plaintiff was a direct third-party beneficiary to defendants' contracts with government entities to pay workers prevailing wages). Accordingly, the defendants' motion to dismiss this claim is denied.

    4. *Unjust Enrichment and Quantum Meruit*

Di Simone pleads, in the alternative, that he is entitled to damages based on the equitable doctrines of unjust enrichment and quantum meruit. "To prevail on a claim of unjust enrichment, a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered . . . ." *Old Republic Nat'l Title Ins. Co. v. Luft*, 52 A.D.3d 491, 491-92

9

(N.Y. App. Div. 2008). "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (internal quotation marks omitted); *accord Wehrum v. Illmensee*, 74 A.D.3d 796, 797 (N.Y. App. Div. 2010).

Under New York law, quantum meruit and unjust enrichment claims can be considered together as a "single quasi contract claim." *Mid-Hudson*, 418 F.3d at 175. This is because "quantum meruit and unjust enrichment are not separate causes of action;" rather, "unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 768 F.Supp. 89, 96 (S.D.N.Y.1991) *rev'd on other grounds*, 959 F.2d 425 (2d Cir. 1992). A claim for quasi contract may be pled in the alternative to a contractual claim. *See* Fed. R. Civ. P. 8(d)(2). However, under New York law a plaintiff cannot recover in quantum meruit if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim. *Mid-Hudson*, 418 F.3d at 175 (citing, *inter alia*, *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)); *see also Jones*, 2012 WL 3235784, at *7.

Di Simone bases his unjust enrichment and quantum meruit claims on his allegations that he was never paid for the time he spent at the central office or traveling between the central office and job sites, Am. Compl. ¶ 31, that he was not properly compensated for the overtime hours he worked, *id.* ¶ 30, and that the defendants were enriched at his expense by not paying him the prevailing wage on various public works contracts. *Id.* ¶ 72. The moving defendants argue that these claims should be dismissed because "if Plaintiff's contract claims

10

were to survive in any form, his common law claims of unjust enrichment and quantum meruit would have to be dismissed." Def. Mem. at 17.

As noted above, the defendants are correct that under New York law Di Simone cannot ultimately prevail on both his contract and his quasi contract claims. However, because at this early stage Di Simone has not yet established the existence of a valid, enforceable agreement that covers the subject matter of this claim, he may plead this quasi contract claim in the alternative. *See* Fed. R. Civ. P. 8(d)(2)-(3); *Jones*, 2012 WL 3235784, at *7. As such, defendants' motion to dismiss these claims is denied.

5. *State Law Claims*

Finally, defendants argue that the entire action should be dismissed because Di Simone's state law claims predominate over his federal claims. Defs. Mem. at 18.

A federal court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction over a claim" under any of four circumstances: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* § 1367(c); *see also Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 153-54 (2d Cir. 2013).

The purportedly novel state law issue that defendants highlight – whether NYLL § 198-b, which prohibits wage kickbacks from employees to employers, applies to a primary contractor – is not particularly complex, and does not predominate over the federal claims in this

11

action, which are substantial. In short, none of the circumstances that warrant a refusal to exercise supplemental jurisdiction is present in this case. *Cf. Carver*, 730 F.3d at 153-54 (supplemental jurisdiction improper where case presented "an unresolved question of state law" and "exceptional circumstances which provide compelling reasons for declining jurisdiction"); *Igene v. Miracle Sec., Inc.*, No. 12-CV-149, 2013 WL 5502868, at *5 (E.D.N.Y. Oct. 2, 2013) (questioning whether supplemental jurisdiction was proper where the case raised a novel and complex issue of state law that predominated over the FLSA claim, which only involved "a handful of overtime hours").

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is denied in its entirety.

So ordered.


John Gleeson, U.S.D.J.


Dated: March 31, 2014
      Brooklyn, New York